STEVEN G. KALAR
Federal Public Defender
Northern District of California
SOPHIA WHITING
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:  (415) 436-7706
Email:      Sophia_Whiting@fd.org

Counsel for Defendant Escoto Villatoro

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 19-720 RS |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| SAUL ELDIBRANDO ESCOTO VILLATORO, | |
| Defendant. | |

## INTRODUCTION

Saul Eldibrando Escoto Villatoro is a young immigrant, who was living in a tent on the streets of San Francisco trying to make ends meet, when he sold $20 worth of methamphetamine to an undercover police officer. He came to the United States looking for opportunities to provide for his family when he was just 16 years old. The dire circumstances in his home country of Honduras forced him to leave school in 6th grade to work in the fields. When he came to the United States, he found limited employment options, but would take any painting and construction jobs that he could find. Despite his unpredictable employment, Mr. Escoto Villatoro managed to send the vast majority of his limited income to his partner, son, and parents in Honduras while he lived on the streets. Unfortunately, he also became involved in drugs. Mr. Escoto Villatoro profoundly regrets and takes responsibility for his actions. In light of his minimal criminal history, his difficult upbringing, the nature and circumstances of the offense, and the inevitability of his deportation to Honduras, Mr. Escoto Villatoro respectfully requests the Court vary downward and impose a sentence of time served (nearly three months imprisonment).

## BACKGROUND

Mr. Escoto Villatoro was born on February 13, 1991, in the capital city of Tegucigalpa, Honduras. He was raised in Guayabillas, a village outside of Tegucigalpa. Growing up, Mr. Escoto Villatoro's family was extremely poor. Mr. Escoto Villatoro attended school only through the sixth grade. He left school at age 12 to work in the fields to help to support his family. He has financially supported his family since then. He farmed corn, beans, and vegetables. His family did not own the land they were farming, or any land. Rather, it was all owned by wealthy landowners and agricultural companies that exploited the desperate workers. He did not have many friends growing up, since he was always busy farming.

At just 16 years old, Mr. Escoto Villatoro took the arduous journey north in search of better employment. When he got to the United States, he did his best to find legitimate work. He learned how to paint, including how to do detailed paint work. Most recently, he worked for CertaPro Painters painting houses and apartments in San Francisco, Daily City, and San Mateo. He also took on cleaning, construction, and moving jobs as a day laborer while searching for more stable

employment. Because of his immigration status, it was hard to secure and maintain legitimate work. Despite his efforts, Mr. Escoto Villatoro could not make ends meet through gainful employment. He ultimately resorted to living in a tent on the street. He began struggling with his own drug addiction, as documented in a prior arrest. *See* PSR ¶ 27.  In his desperation, he made the regrettable decision to additionally begin selling small amounts of drugs to support his addiction and his family. He is deeply embarrassed of this mistake.

Mr. Escoto Villatoro has been with his partner, Nancy Janet Vargas Arazola, for seven years. They have a six-year-old son together, Esmainy, who lives with his mother in Honduras. His son misses him, and asks when he is coming home, so Mr. Escoto Villatoro also tries to see his deportation as an opportunity to be back with his loved ones. Before his arrest, Mr. Escoto Villatoro maintained daily contact with his partner, child, and parents. Even when homeless, he sent them $200-300 weekly to help them survive.

Since being in Santa Rita Jail, Mr. Escoto Villatoro feels incredibly guilty that he put himself in this position and is worried about the impact on his family. His mother is diabetic and had to go to the hospital last month for hypoglycemia. His father is suffering from dementia and diminishing eyesight. Mr. Escoto Villatoro's family recently told him that his father got lost visiting another village, and could not remember his way back home. His father used to be the only other provider in the family, before his health worsened. Mr. Escoto Villatoro's partner does what she can to get income while he is in custody, doing other people's laundry and grinding cornmeal for tortillas. In jail, he cannot send them any money and can only afford to call them once every couple of weeks. Mr. Escoto Villatoro's priority is to get back home to care for his family.

On December 4, 2019, Mr. Escoto Villatoro sold $20 worth of methamphetamine to an undercover San Francisco police officer. When officers searched him, they found small bindles of heroin and cocaine base in his pockets. The packaging and amount was consistent with the small hand-to-hand sale for which he was arrested.

Since December 23, 2019, Mr. Escoto Villatoro has been imprisoned at Santa Rita Jail. The jail is notoriously difficult and provides few opportunities to inmates, but Mr. Escoto Villatoro does his best by going to church and attending Open Gate classes to gain trade skills and improve his English.

# DISCUSSION

## I. The Sentencing Guidelines (18 U.S.C. § 3553(a)(4))

Mr. Escoto Villatoro stipulates to Adjusted Offense Level 12, set forth in the parties' plea agreement. He also agrees with U.S. Probation's calculation of his Criminal History Category, II, for a sentencing range of 12 to 18 months.

Although the Court must remain mindful of the Sentencing Guidelines recommendation, the advisory Guideline range is not presumptively reasonable and it cannot be given any more or less weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The court's paramount concern must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991.

Under the applicable 18 U.S.C. § 3553(a) factors, Mr. Escoto Villatoro respectfully requests that the Court vary downward from the low end of the advisory range to a sentence of "time served," nearly three months of incarceration, for the reasons stated below.

## II. The Nature and Circumstances of the Offense and the Characteristics of Mr. Escoto Villatoro's Life Warrant A Sentence of Credit for Time Served (18 U.S.C. § 3553(a)(1))

As detailed above, the circumstances surrounding the offense and the characteristics of Mr. Escoto Villatoro's life counsel a downward variance from the advisory range. He relates these circumstances not to minimize his conduct, but to provide context for it.

Mr. Escoto Villatoro did not receive the childhood every child deserves. He started working to help support his family at age 12 and has been doing so ever since. He spent the majority of his life seeking out and securing legitimate employment. Unfortunately, with his little education and lack of legal immigration status, his options have been limited and unstable. Despite resorting to living in a tent and struggling with his own addiction, he continued to send hundreds of dollars to his family each month. Vulnerable and desperate, Mr. Escoto Villatoro turned to selling small amounts of drugs to try to continue to support his family. He knows this was a mistake. He is eager to get back to Honduras to escape his drug habit and find work to support his family again, especially given his

parents' significant health complications.

### III. The Offense is Relatively Less Serious and a Sentence of Time Served is Just Punishment (18 U.S.C. § 3553(a)(2)(A))

While Mr. Escoto Villatoro takes responsibility for his criminal conduct in the instant offense and recognizes that selling any amount of drugs negatively impacts public health, the scope of his offense should be viewed in relation to other federal cases. The fact is that a hand-to-hand drug sale on the street with no aggravating factors is a minor offense compared to the vast majority of federal prosecutions, including drug prosecutions. For the most part, street-level drug offenses generally would not be prosecuted in federal court; to the contrary, federal drug cases normally present more serious facts, such as substantially larger quantities of controlled substances, possession and/or use of firearms or other weapons, or an organized drug trafficking operation. In comparison, the offense in Mr. Escoto Villatoro's case is relatively minor, and accordingly does not warrant twelve months in custody.

### IV. A Sentence of Time Served Affords Adequate Deterrence and Mr. Escoto Villatoro's Inevitable Deportation Minimizes Public Safety Concerns (18 U.S.C. §§ 3553(a)(2)(B) and (C))

The inevitability of Mr. Escoto Villatoro's deportation makes the deterrent effect of three months incarceration that much stronger in this case. His detention and removal from the United States following his release from federal imprisonment minimizes any potential concerns for public safety—which are already slight given Mr. Escoto Villatoro's minimal criminal history.

Deportation is not a formal component of punishment in a federal criminal case, but "as a matter of federal law, deportation is an integral part—indeed sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). Deportation here also serves to reinforce the deterrent value of a sentence of time served. Unlike a similarly situated citizen defendant, Mr. Escoto Villatoro will not return to the local community following completion of his sentence. He will be quite literally removed from the community. Selling drugs on the street in the Tenderloin was always a terrible mistake on his part, but the inevitability of deportation makes that fact especially clear to Mr. Escoto Villatoro.

Mr. Escoto Villatoro has never had a federal criminal case, and his most recent state conviction is nearly ten years old. He now understands the serious consequences if he were to try to come back to the United States. In addition to prosecution for illegal re-entry, he understands he would also face imprisonment for violating the terms of his federal supervised release.

Mr. Escoto Villatoro deeply feels the effect his incarceration has had on his family, feeling helpless to provide for them while he is in jail. He will not risk putting them in this position again. Once he is back in Honduras, Mr. Escoto Villatoro will be reunited with his family, with whom he will remain. He knows he is needed there now, in light of his parents' worsening medical conditions.

## V.   A Sentence Other Than Time Served Creates Unwarranted Disparities (18 U.S.C. § 3553(a)(6))

The imposition of a sentence greater than three months would create unwarranted sentencing disparities in two ways. First, it would impose a sentence greater than those received by defendants in recent analogous cases in the Northern District of California. Second, it would amount to differential treatment compared to similarly situated citizen defendants given that Mr. Escoto Villatoro is ineligible for sentencing alternatives because of his immigration status.

This case arose from the federal government's recent Federal Initiative for the Tenderloin ("FITT"). Defendants in strikingly similar cases arising from FITT have received sentences of time served. The following cases are instructive:

- *United States v. Brayan Arteaga*, CR 19-426 WHO. Mr. Arteaga was arrested for selling $16 of crack cocaine to an undercover officer. He had recently been convicted of an offense involving drug sales in San Francisco. Judge Orrick sentenced Mr. Arteaga to credit for time served (effectively one month).

- *United States v. Pedro Anibal Anariba Muncia*, CR 19-428 CRB. Mr. Muncia was arrested for a $20 heroin sale. Arresting officers found $996, 37.3 grams (gross) heroin, 35.3 grams (gross) cocaine base, and 33.1 grams (gross) crystal methamphetamine on Mr. Muncia. He previously received a federal sentence of 180 days jail for distributing controlled substances, after which he was deported. Following the government and

      defendant's recommendation, Judge Breyer sentenced Mr. Muncia to time served (effectively four months).

- *United States v. Jesus Flores,* CR 19-429 SI. Mr. Flores was arrested for a $15 drug sale. Arresting officers found $932 cash and multiple drugs on him, including 56 grams (gross) cocaine base, 38.2 grams (gross) heroin, 32.5 grams (gross) methamphetamine, and 31.1 grams (gross) marijuana. He has two prior deportations. Judge Illston sentenced him to credit for time served (effectively four months).
- *United States v. Wilfredo Cabrerra*, CR 19-452 WHO. Mr. Cabrerra was convicted of selling $17 worth of heroin. He has three prior drug sale convictions, including a four-year prison sentence, as well as six prior deportations. Judge Orrick sentenced Mr. Cabrerra to credit for time served (effectively four months).

As in those cases, Mr. Escoto Villatoro here engaged in low-level drug sales in the Tenderloin. The government believed that a time-served sentence (effectively four months) was appropriate in Mr. Muncia's case, which involved a prior federal drug conviction, prior deportation, and a greater quantity of controlled substances. *See* CR 19-428 CRB, Dkt. No. 15 at 1. Yet inexplicably, the same government now recommends a sentence three times as severe for Mr. Escoto Villatoro. To avoid unwarranted sentencing disparities among similarly situated defendants, the Court should sentence Mr. Escoto Villatoro to time served.

Furthermore, since Mr. Escoto Villatoro is not a citizen, he is not eligible for preferable alternatives to a full term of incarceration, like community confinement or home detention. *See* U.S.S.G. § 5C1.1(d)(2). He cannot benefit from the drug rehabilitation programming or Alternatives To Incarceration Program (ATIP) available to eligible citizen defendants, despite his own addiction and the role it played in his offense. Compounding this disparity is the likelihood that Mr. Escoto Villatoro will face immigration detention upon completion of his criminal sentence. Unlike similarly situated U.S. citizen defendants, at the end of his custodial sentence, Mr. Escoto Villatoro will be detained by Immigration and Customs Enforcement for an unknown amount of time and then deported to Honduras. Mr. Escoto Villatoro should not be disproportionately punished because of his ineligibility for alternatives to incarceration based on where he was born.

**VI.  A Sentence of Time Served Is Cost-Effective, Considering Mr. Escoto Villatoro's Inevitable Deportation.**

Given Mr. Escoto Villatoro's inevitable deportation, a downward variance to time served will save taxpayers' dollars without threatening public safety, *see supra* Section IV. *See United States v. Loaiza-Sanchez*, 622 F.3d 939, 942 (8th Cir. 2010) (Bright, J., dissenting) ("[L]ong sentences for illegal aliens punish not only the defendant but the American taxpayer. 'It would be more sensible to give . . . a stiff, but shorter sentence and then to promptly deport him . . ..'" (quoting *United States v. Chavez*, 230 F.3d 1089, 1092 (8th Cir. 2000) (Bright, J., concurring))); *United States v. Maldonado*, 242 F.3d 1, 2 (1st Cir. 2001) (referencing a statement by the district court that "the real reason I'm going to depart downward here is because I don't want the taxpayers to pay for him unnecessarily"). Cost-effectiveness during the federal government's current FITT campaign is especially important, in light of the accompanying increased rates of defendants and detention.

## CONCLUSION

For the aforementioned reasons, the Court should sentence Mr. Escoto Villatoro to time served, effectively nearly three months imprisonment.

Dated:   March 10, 2020               Respectfully submitted,

                                      STEVEN G. KALAR
                                      Federal Public Defender
                                      Northern District of California

                                               /S
                                      _____
                                      SOPHIA WHITING
                                      Assistant Federal Public Defender